UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 1 8 2018

PMJ Capital Corp.,

              Plaintiff,

—v—

Frank Bauco, et al.,

              Defendants.

16-cv-6242 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    This case concerns a vessel foreclosure action brought by Plaintiff PMJ Capital Corp. ("PMJ"). At issue are two cross-motions: (1) a motion by PMJ to order the interlocutory sale of Defendant The Lady Antoinette ("the Vessel"); and (2) a motion by Defendants Frank and Antoinette Bauco ("the Baucos") to vacate the default entered against them on March 9, 2017. For the reasons provided below, the Court conditionally grants the vacatur, provided that the Baucos provide security, and denies the motion for an interlocutory sale.

## I.   BACKGROUND

    In 2013, the Baucos sought a loan from PMJ. According to Frank Bauco, he needed the loan to cover his personal expenses. *See* Dkt. No. 80, Ex. A ("Bauco Affidavit") ¶¶ 16-20. On November 20, 2013, PMJ entered a loan agreement with 550 Realty Associates, LLC ("550 Realty"), of which Mr. Bauco was a managing member. *See* Dkt. No. 74, Ex. B ("Promissory Note"). Under the terms of the Promissory Note ("the Note"), PMJ gave 550 Realty $75,000, which 550 Realty agreed to pay back at an interest rate of 16%. *Id.* Also on November 20, 2013, the Baucos signed a Guaranty of Payment, personally guaranteeing the Note. *See* Dkt. No. 74, Ex. C ("Guaranty of Payment"). In addition, to secure the loan, the Baucos executed in favor

1

of PMJ a First Preferred Ship Mortgage on the Vessel, which they own. *See* Dkt. No. 74, Ex. D ("First Preferred Ship Mortgage"). After fees were taken out of the $75,000 loan payment, 550 Realty received approximately $65,500 from PMJ. *See* Bauco Affidavit ¶ 26. According to Mr. Bauco, the money from the loan "was used for primarily personal, family, and household purposes." *See id.* ¶ 28.

550 Realty made payments on the Note for approximately one year. *See* Bauco Affidavit ¶ 27; Dkt. No. 79, Ex. 1 ("State Court Complaint") ¶ 13. There is no evidence that 550 Realty or the Baucos made any payments to PMJ after July 2015. *See* Bauco Affidavit ¶ 27; State Court Complaint ¶ 13.

Therefore, in August 2016, PMJ brought suit against the Baucos and the Vessel[1] alleging that the Baucos were in default under the terms of the Guaranty and the Mortgage and seeking to foreclose on the Vessel. *See* Dkt. No. 1 ("Complaint").

According to PMJ, on September 22, 2016, the Baucos' attorney at the time, Phillip Grimaldi, accepted service of the Summons and Complaint on behalf of the Baucos. *See* Dkt. No. 13 ("Affirmation of Service") ¶ 4. In exchange, PMJ agreed to extend the time for the Baucos to respond until October 20, 2016. *See* Dkt. No. 57, Ex. 1 ("Emails with Grimaldi"). According to Mr. Bauco, at some point Grimaldi assured him that Grimaldi would file an answer in response to PMJ's complaint. Bauco Affidavit ¶ 7.

On October 26, 2016, upon PMJ's application, the Court authorized the issuance of a warrant for the arrest of the Vessel. Dkt. No. 15 ("Order Authorizing Issuance of Warrant"). Around the same time, PMJ requested an entry of default against the Baucos because they had failed to file any responsive pleading. *See* Dkt. No. 18 ("First Request for Entry of Default").

---

[1] PMJ also named as a defendant New York Athletic Club ("NYAC"), where the Vessel was and is located. *See* Complaint.

The Court denied the request without prejudice because it could not conclude that service on Grimaldi clearly constituted proper service. *See* Dkt. No. 31 ("Order Denying Default").

On November 30, 2016, the United States Marshal for the Southern District of New York arrested the Vessel. *See* Dkt. No. 54 ("Receipt and Return of Service Executed"). A few days later, on December 2, 2016, PMJ informed Grimaldi of the Vessel's arrest. *See* Dkt. No. 57, Ex. 2 ("12/2/16 Letter to Grimaldi"). In late January 2017, Grimaldi informed PMJ that he no longer represented the Baucos. Dkt. No. 57 ("Ware Declaration") ¶ 7.

Given Grimaldi's statement and the Court's earlier denial of its request for an entry of default, PMJ decided to serve the Baucos personally, which it did on February 14, 2017. *See* Dkt. No. 48 ("Affidavit of Service on Frank Bauco"); Dkt. No. 49 ("Affidavit of Service on Antoinette Bauco"). In addition, in early March 2017, PMJ informed the Baucos of the Vessel's arrest. *See* Dkt. No. 57, Ex. 4 ("3/2/17 Letter to Baucos").

When the Baucos failed to respond to the complaint, PMJ again requested to enter default against them. *See* Dkt. No. 50 ("Second Request for Entry of Default"). This time, on March 9, 2017, the Clerk of the Court entered a Certificate of Default against the Baucos. Dkt. No. 52 ("Certificate of Default").

On April 6, 2017, PMJ moved for an interlocutory sale of the Vessel. Dkt. No. 55 ("Motion for Interlocutory Sale"). On May 4, 2017, the Baucos, in their first filing in this litigation, requested an extension of time to respond to PMJ's motion. *See* Dkt. No. 64. The Court granted the extension, Dkt. No. 65, and on May 16, 2017, the Baucos submitted their opposition to PMJ's motion and also moved to vacate the default, Dkt. No. 73 ("Cross Motion to Set Aside Default").

The Court addresses each motion in turn, beginning with the Baucos' motion to vacate the default.

## II. MOTION TO VACATE DEFAULT

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." However, after such default is entered, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The standard for vacating a default is more lenient than that for a default judgment, but the "good cause" factors are the same for both. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Courts assess three criteria to determine whether "good cause" exists: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). The Second Circuit has expressed a strong "preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).

The Baucos contend that all three "good cause" factors weigh in favor of vacating the default here.

### A. Willfulness of Default

The Baucos argue that the default was not willful but was instead the result of negligence by their former counsel, Grimaldi. *See* Dkt. No. 74 ("Opposition to Motion for Interlocutory Sale") ¶¶ 28-32.

4

The Second Circuit has interpreted willfulness "to refer to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Instead, willful conduct is that which is "egregious" and "not satisfactorily explained." *Id.* However, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'" *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). Thus when a defendant "does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control," an inference of willful default is justified. *Guggenheim Capital, LLC*, 722 F.3d at 455. "[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders . . . ." *McNulty*, 137 F.3d at 738-39 (internal citations omitted).

Moreover, "where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *Id.* at 740. When a party has "diligently inquired of [his] attorney as to the status of [his] case 'three or four times a week' over a six-month period and . . . the attorney ha[s] given assurances on each occasion that the matter [i]s being handled properly," the party is not responsible for the attorney's neglect. *Id.* But when a party does "not talk to his attorney for nearly a year, and . . . receive[s] no bills during that time to indicate that any attention [i]s being given to his case," it is appropriate to impute the attorney's willful default to the client. *Id.*

Here, the Baucos "do[] not deny that [they] received the complaint" or notice of the arrest, or "that [they] never answered the complaint." *Guggenheim Capital, LLC*, 722 F.3d at

5

455. Indeed, the evidence demonstrates that the Baucos' original counsel, Grimaldi, was aware of the complaint in this case no later than September 22, 2016. *See* Emails with Grimaldi. Yet the Baucos did not file any responsive pleadings or take steps to release the Vessel until May 2017, after PMJ had filed a motion for interlocutory sale of the Vessel. Neither party has submitted evidence explaining why Grimaldi failed to file a response in this case. That the failure to respond is unexplained cuts in favor of finding the default to have been willful. *See McNulty*, 137 F.3d at 738-39.

However, the Baucos insist that they intended to respond to PMJ's complaint and that the failure to do so should be attributed to Grimaldi, not to them. Mr. Bauco contends that Grimaldi "informed and assured" Mr. Bauco that he would "prepare, serve and file a timely answer" to the complaint, and Mr. Bauco "relied on his representation." Bauco Affidavit ¶ 7. Yet the Baucos do not allege that they "diligently inquired of their attorney as to the status of their case." *McNulty*, 137 F.3d at 740. Moreover, although it is not clear when exactly the Baucos became aware of the action, they were at least aware by February 14, 2017, *see* Bauco Affidavit ¶ 6, and likely before that, as they communicated with Grimaldi about the case and he ceased representing them in January 2017, *see* Bauco Affidavit ¶ 7; Ware Declaration ¶ 7. The Baucos were also aware of the arrest of the Vessel no later than early March 2017. *See* 3/2/17 Letter to Baucos. Despite being aware of the action pending against them, there is no evidence that the Baucos actively monitored the case or consistently communicated with their counsel. Accordingly, Grimdaldi's willful default is imputed to the Baucos.

The Court thus finds the default to have been willful.

**B. Meritorious Defenses**

The Baucos assert three defenses to PMJ's underlying claim. *See* Opposition to Motion for Interlocutory Sale ¶¶ 34-39.

To succeed on a motion to vacate a default, the defendant does not need to conclusively establish his defense, but he must present more than conclusory assertions or denials. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 187; *McNulty*, 137 F.3d at 740.

Here, the Baucos allege that PMJ violated New York state's usury rules; that PMJ failed to name 550 Realty as a necessary party; and that PMJ lacks standing to foreclose on the Vessel. *See* Opposition to Motion for Interlocutory Sale ¶¶ 35-38. The Court considers each defense in turn.

### 1. Usury Defense

The Baucos allege that PMJ Capital executed a usurious loan because it charged an interest rate in excess of New York's maximum allowable interest rate.[2] *See* Opposition to Motion for Interlocutory Sale ¶¶ 35-36.

New York's usury law prohibits a lender from imposing a rate of interest greater than 16% per year. *See* N.Y. GEN. OBLIG. LAW § 5-501(1); N.Y. BANKING LAW § 14-a(1). However, corporations—meaning "all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships"—may not raise a civil usury defense, though they may raise a criminal usury defense if the interest rate exceeds 25%. N.Y. GEN. OBLIG. LAW § 5-521(1), (3); N.Y. PENAL LAW § 190.40. Likewise, "[a]n individual guarantor of a corporate obligation is . . . precluded from asserting . . . a [civil usury]

---

[2] The Baucos note in their reply brief that there might be a question under the terms of the contract whether New York law applies to the interest rate at issue, but they insist that it does so apply. *See* Dkt. No. 80 ("Baucos' Reply") ¶¶ 37-39. PMJ has not argued that under the contract terms New York law does not apply. Accordingly, the Court assumes for the purposes of this Order that New York law governs the interest rate in the loan.

7

defense." *Tower Funding, Ltd. v. David Berry Realty, Inc.*, 755 N.YS.2d 413, 415 (App. Div. 2003). But "where a corporate form is used to conceal a usurious loan made for personal, not corporate purposes, the defense of usury may be interposed." *Id.* That is the case when "the loan was made to discharge personal debts and obligations of the individual." *Schneider v. Phelps*, 359 N.E.2d 1361, 1364 (N.Y. 1977).

Furthermore, "where usury does not appear on the face of the note, usury is a question of fact." *Freitas v. Geddes Sav. & Loan Ass'n*, 471 N.E.2d 437, 443 (N.Y. 1984). In determining the interest rate of a loan, reasonable expenses attendant to the loan are not included. *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (citing *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 603 N.E.2d 246, 247 (N.Y. 1992) ("[A] borrower may pay reasonable expenses attendant on a loan without rendering the loan usurious.")). "However, when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate." *Id.* (citing *Lloyd Capital Corp.*, 603 N.E.2d at 247).

Here, PMJ entered the loan agreement with 550 Realty, a limited liability company. Promissory Note. The Baucos, as individuals, guaranteed 550 Realty's obligations under the Note, *see* Guaranty, but 550 Realty received the loan proceeds, *see* Dkt. No. 74, Ex. I ("Bank of America Statement"); Bauco Affidavit ¶ 26. The Baucos are thus individual guarantors of a corporate obligation and as such should be unable to raise a usury defense. *See Tower Funding, Ltd.*, 755 N.Y.S.2d at 415. However, the Baucos claim that although 550 Realty entered the loan agreement with PMJ, the Baucos intended to use the loan for personal expenses and explained this to PMJ at the time. Bauco Affidavit ¶¶ 18-21. Accordingly, they argue, they may raise the defense of usury. Although a factfinder may conclude, or the development of further facts may

8

show, that the Baucos' allegations regarding the personal purpose of the loan are not credible, the Court cannot make that determination at this stage. Instead, the Court concludes that the Baucos have provided facts that would support a finding that, although they are individual guarantors of a corporate obligation, they may assert a usury defense because the loan was made to discharge personal obligations. *See Schneider*, 359 N.E.2d at 1364.

Whether the "corporate form [was] used to conceal" a loan made for personal purposes is irrelevant, though, if the loan was not usurious. Here, the Note set the interest rate at 16% per year. Promissory Note. Even assuming that the usury defense is available to the Baucos, an interest rate of 16% would not violate the law. *See* N.Y. GEN. OBLIG. LAW § 5-501(1); N.Y. BANKING LAW § 14-a(1). But the Baucos argue that the Court should take into account fees paid in addition to the interest payments. *See* Dkt. No. 80 ("Baucos' Reply") ¶¶ 48-52. If such fees are taken into account, the interest rate would exceed 16%. It is possible that the fee payments constitute reasonable expenses associated with the loan and thus should not be included in the interest rate calculation. At this stage, though, the purpose of those payments is a question of fact. *See Freitas*, 63 N.Y.2d at 262.

Accordingly, the Baucos have demonstrated that they may be able to successfully claim a usury defense.

### 2. *Failure to Name 550 Realty*

As another defense, the Baucos contend that 550 Realty is a necessary party to this action that PMJ failed to name as a defendant. *See* Opposition to Motion for Interlocutory Sale ¶ 37.

Federal Rule of Civil Procedure 19(a) requires that a person "whose joinder will not deprive the court of subject-matter jurisdiction" be joined as a party if: "(A) in that person's absence, the court cannot accord complete relief among existing parties," or (B) that person has

9

such an interest in the action that "disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect [his] interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." In cases involving guarantees, the beneficiary of a guarantee typically may choose to sue the guarantor alone, without the principal debtor. *See Huber Lathing Corp. v. Aetna Cas. & Sur. Co.*, 517 N.Y.S.2d 758, 760 (App. Div. 1987) ("[I]t is not unusual for the beneficiary of a guarantee to sue a guarantor or surety alone, apart from any against the principal debtor . . . and there is no requirement that the beneficiary join both parties."); *Holland v. Fahnestock & Co., Inc.*, No. 01 Civ. 2462, 2002 WL 1774230, at *10 (S.D.N.Y. Aug. 1, 2002), *adopted by* 210 F.R.D. 487 (S.D.N.Y. 2002) ("If the action is to obtain a money judgment against the surety alone, the creditor cannot be compelled to bring in the principal as a defendant, unless the suretyship contract expressly provides as a condition precedent to liability on the part of the surety that the principal must be made a party to any action on the undertaking." (quoting 63 *N.Y. Jur.2d* Guaranty & Suretyship § 335)); *see also Lipedes v. Liverpool & London & Globe Ins. Co.*, 171 N.Y.S. 484, 486 (App. Div. 1918) ("[T]he courts have repeatedly held that any instrument named in the statute was void if usury was given, provided the defense was properly insisted on by the person who gave the usury *or his privies to the contract, sureties, devisees, or personal representatives.*" (emphasis added)). In addition, when a defendant is the president and sole shareholder of a company that was not joined in the action, the company is not a necessary party because the defendant is "certainly . . . able to adequately represent [the company]." *BMG Music v. Vanxy, Inc.*, No. 98 Civ. 6496, 1999 WL 493345, at *2 (S.D.N.Y. July 12, 1999); *see Wilshire Ltd. v. Rajaei*, No. 06 Civ. 5613, 2007 WL 2457410, at *5 (S.D.N.Y. Aug. 22, 2007); *Rose v. Simms*, No. 95 Civ. 1466, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29, 1995).

Here, PMJ named as defendants the Baucos and the Vessel but not 550 Realty, a party to the Note. *See* Complaint. As the beneficiary of a guarantee from the Baucos, though, PMJ could choose to sue the guarantor, the Bacuos, rather than the principal debtor, 550 Realty. *See Huber Lathing Corp.*, 517 N.Y.S.2d at 760. Indeed, joining 550 Realty is not necessary to accord complete relief among the parties—the Baucos guaranteed the loan and executed the mortgage at issue. PMJ can thus obtain complete relief from the Baucos and the Vessel. Moreover, 550 Realty has not claimed an interest relating to the subject of the action. Even if it had, Mr. Bauco, as a managing member of 550 Realty, can likely represent that interest. *See BMG Music*, 1999 WL 493345, at *2. The Court notes, however, that there appears to be a question regarding the extent to which the Baucos could pursue the same defenses that 555 Realty could pursue. *See* Baucos' Reply ¶¶60-61 (contending that 550 Realty has an interest that may be impaired in this litigation because the loan violates the criminal usury law and if the Court were to find that the loan was made to 550 Realty for a corporate purpose, 550 Realty "would be the only party that could assert that [the] transaction [was] void based upon criminal usury" because a usurious transaction "is void when properly insisted on by the proper party, otherwise it is only voidable"). It is thus unlikely that the Baucos could succeed on their necessary party defense, but the Court declines to definitively reject the defense at this stage.

### 3. *PMJ's Interest in the Vessel*

Finally, the Baucos argue that PMJ lacks standing to pursue foreclosure on the Vessel because 550 Realty executed the Note, but 550 Realty does not own the Vessel. Opposition to Motion for Interlocutory Sale ¶ 38.

The Court understands the Baucos' argument to be that PMJ has no legally recognized interest in the Vessel. The record disproves that contention. The Baucos are the guarantors of

11

the loan between PMJ and 550 Realty, and they executed a First Preferred Ship Mortgage in favor of PMJ to secure that loan. *See* Guaranty of Payment; First Preferred Ship Mortgage. That 550 Realty does not own the Vessel is irrelevant because the Baucos do own the Vessel, they agreed to serve as guarantors, and they offered the Vessel as security. The Baucos' assertion that PMJ lacks any interest in the Vessel is thus not meritorious.

### C. Prejudice

The Baucos argue that PMJ will not suffer prejudice if the default is vacated because the loan was usurious and thus void *ab initio*.³ Baucos' Reply ¶¶ 55-56. PMJ responds that the defense of usury is unavailable to the Baucos and asserts that it would suffer financial prejudice if the default were vacated. Dkt. No. 85 ("PMJ's Surreply"), at 3-6. PMJ complains that it "has been paying for the storage of the Vessel at the NYAC, the insurance on the Vessel, and the U.S. Marhsal's insurance since November 2016 and . . . continues to pay the cost of storing the Vessel at the NYAC and maintaining insurance on the Vessel." *Id.* at 5. PMJ also emphasizes that the Vessel has been out of water during this litigation and is thus at an increased risk of deterioration. *Id.* at 5-6. The Baucos do not dispute that PMJ has suffered the cost of storing the Vessel, but they argue that any potential for prejudice could be eliminated if the Court were to "craft a financial remedy as a condition of vacating the default." Baucos' Reply ¶ 56.

Delay alone does not constitute prejudice; instead, prejudice exists when, for example, vacatur will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)

---

³ The Court notes that the Bacuos do not cite authority to support this argument, and it is in tension with the Baucos' assertion in the context of their necessary party defense that whether the loan is void or voidable depends on who is making the claim of usury. *See* Baucos' Reply ¶ 60-61; *see also McNellis v. Raymond*, 329 F. Supp. 1038, 1046 (N.D.N.Y. 1971) ("As construed by the courts, [the usury] statute has always meant something less than void.").

(internal quotation marks omitted). Prejudice may also exist if vacatur would "thwart plaintiff's recovery or remedy." *Green*, 420 F.3d at 110 (internal quotation marks omitted).

Here, PMJ may suffer financial prejudice if the default is vacated. Although the storage costs that PMJ is paying are the result of the Vessel's arrest, not the result of the default, PMJ may be forced to carry those costs longer if the default is vacated. Moreover, the delay caused by vacating the default could "thwart [PMJ's] recovery or remedy" because the longer the Vessel is out of water and not receiving maintenance, the greater the risk of the Vessel's deterioration and attendant depreciation in value.

### D. Balance of the Factors

Although it is close, given the general preference for deciding cases on the merits, the factors ultimately weigh in favor of vacating the default: although the default was willful, the Baucos have a potentially meritorious defense. In addition, the prejudice that PMJ may suffer is largely financial, rather than the loss of evidence or difficulties of discovery. The Court can protect against the risk of financial harm by imposing a condition on vacatur.

Courts may condition the vacatur of defaults "on the posting of security for payment of all or part of an eventual adjudicated judgment." *Powerserve Int'l, Inc.*, 239 F.3d at 515. "Whether there is justification for such a condition will depend on the circumstances of the case, and it is incumbent on the district court to make findings sufficient to permit appellate review of the condition's reasonableness." *Id.* at 515-16.

In this case, conditioning vacatur on the posting of a bond or other security is necessary to protect PMJ's rights. As stated above, Defendants' willfully defaulted in this case. Additionally, this litigation arose when the Baucos defaulted on a loan. To satisfy the loan, PMJ sought to foreclose on the Vessel. Now, PMJ faces the possibility that it will be unable to fully

recover, as the Vessel will likely depreciate in value the longer it remains out of water. Moreover, PMJ has been paying, and will continue to pay, costs of $32.50 per day since the Vessel was arrested. *See* Ware Declaration ¶ 17. Finally, the Baucos themselves suggested "the Court could craft a financial remedy as a condition of vacating the default." Baucos' Reply ¶ 56.

The Court thus conditions vacatur on the Baucos' posting a bond or other form of adequate security in the amount of $143,749.92, the minimum amount PMJ stated it was entitled to in its complaint. *See* Complaint ¶ 30.

## III. INTERLOCUTORY SALE

PMJ seeks an interlocutory sale of the Vessel and requests the PMJ be allowed to credit bid at the sale. Dkt. No. 56 ("PMJ Memo"), at 7-9.

Under Supplemental Rule of Civil Procedure E(9)(a)(i), the court may order the interlocutory sale of property if:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing the release of the property.

PMJ contends that all three of those conditions are satisfied here. PMJ Memo at 7. As noted above, the Court acknowledges that the Vessel faces physical harm because it is out of the water and exposed to the elements; that PMJ has spent thousands of dollars on storage costs; and that the Baucos failed to make any effort to secure the release of the Vessel for several months. However, given the possibility that the Baucos have a meritorious defense to the action, the Court declines to order the sale of the Vessel. Nevertheless, as explained above, in light of the risk of the Vessel's deterioration and the costs that vacating the default may impose on PMJ, the Court conditions the vacatur on the posting of security.

## IV. CONCLUSION

The Court grants the Baucos' motion to vacate the default provided that the Baucos post a bond or other form of adequate security in the amount of $143,749.92. The Court denies PMJ's motion for an interlocutory sale of the Vessel.

The Baucos are ordered to submit a letter to the Court within 3 days of posting the security informing the Court that they have done so. The Baucos are also ordered to file an answer to PMJ's complaint within 14 days of the date of this Order.

The parties are ordered to appear before the Court on March 9, 2018, at 3:30 p.m. for an initial pretrial conference. The parties are directed to submit a joint letter and proposed case management plan to the Court 7 days before that conference.

This resolves Docket Numbers 55 and 73.

SO ORDERED.

Dated: January 17, 2018
      New York, New York

_____
ALISON J. NATHAN
United States District Judge