UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2019

PMJ Capital Corp.,

                Plaintiff,

—v—

Frank Bauco, et al.,

                Defendants.

16-cv-6242 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This case concerns a foreclosure action brought by Plaintiff PMJ Capital Corp. against a vessel, the Lady Antoinette, and its owners, Frank and Antoinette Bauco. At issue is the Baucos' request to be relieved of the condition that they post bond or other adequate security in order to proceed with this action, as required by the Court's January 18, 2018 Memorandum Opinion & Order. For the reasons provided below, the Court DENIES the Baucos' motion.

## I.    FACTUAL BACKGROUND

The facts underlying this case are described in detail in the Court's January 18 Opinion. *See* Dkt. No. 88. In brief, the case arose following the Baucos' default on a promissory note provided by PMJ to 550 Realty Associates, LLC, of which Defendant Frank Bauco was a managing member. *See* Dkt. No. 74, Ex. B. The $75,000 loan was personally guaranteed by the Baucos. *See* Dkt. No. 74, Ex. C. The Baucos also executed a First Preferred Ship Mortgage on the Lady Antoinette in favor of PMJ as further security for the loan. *See* Dkt. No. 74, Ex. D. Under the terms of the Promissory Note, 550 Realty was to pay back the $75,000 loan at an interest rate of 16%. *See* Dkt. No. 74, Ex. B. 550 Realty made payments on the Note for approximately one year, but ceased payments in the summer of 2015. *See* Dkt. No. 79, Ex. 1

1

¶ 13. In August 2016, PMJ brought this suit alleging that the Baucos were in default under the terms of the Promissory Note and seeking to foreclose on the Lady Antoinette. *See* Dkt. No. 1.

## II.   PROCEDURAL BACKGROUND

The procedural background of this case is complex, but worth describing in some detail, as it is particularly relevant to the motion now before the Court.

PMJ filed its Complaint on August 5, 2016. *See* Compl. According to PMJ, Phillip Grimaldi, the Baucos' attorney at the time the Complaint was filed, accepted service of the Summons and Complaint on their behalf on September 22, 2016. *See* Dkt. No. 13 ¶ 4. PMJ agreed at that time to extend the time for the Baucos to respond until October 20, 2016 in exchange for Grimaldi's acceptance of service of process. *See* Dkt. No. 57, Ex. 1.

On October 26, 2016, the Court authorized the issuance of a warrant for the arrest of the Lady Antoinette upon application of PMJ. Dkt. No. 15. One day later, PMJ requested that the Clerk of Court enter default against the Baucos because they had failed to file any responsive pleading by October 20, 2016. *See* Dkt. No. 18. This request was denied without prejudice because the Court was unable to conclude that service on Grimaldi was proper. *See* Dkt. No. 31.

The Lady Antoinette was arrested by the United States Marshal for the Southern District of New York on November 30, 2016, *see* Dkt. No. 54, and PMJ informed Grimaldi of its arrest on December 2, 2016, *see* Dkt. No. 57, Ex. 2. In late January 2017, Grimaldi notified PMJ that he no longer represented the Baucos. Dkt. No. 57 ¶ 7.

In response, PMJ decided to serve the Baucos personally on February 14, 2017, *see* Dkt. No. 48; Dkt. No. 49, and in early March 2017, it informed the Baucos of the Lady Antoinette's arrest, *see* Dkt. No. 57, Ex. 4. The Baucos failed to respond to the Complaint, and thus PMJ

again requested the Clerk of Court enter default against them, *see* Dkt. No. 50, which the Clerk of Court did on March 9, 2017, Dkt. No. 52.

PMJ then moved for an interlocutory sale of the Lady Antoinette on April 6, 2017. Dkt. No. 55. The Baucos, in their first filing in this litigation, requested an extension of time to respond to this motion on May 4, 2017, nine months after the Complaint was filed. *See* Dkt. No. 64. The Court granted the Baucos' request, Dkt. No. 65, and on May 16, 2017, they submitted their opposition to PMJ's motion and moved to vacate the default, Dkt. No. 73.

In its January 18 Opinion, the Court vacated the default, noting that the balance of factors was "close" but ultimately weighed in favor of vacating "given the general preference for deciding cases on the merits." Dkt. No. 88 at 13. However, the Court conditioned vacatur on the posting of a bond or other adequate security in the amount of $143,749.92 in order to "protect PMJ's rights." *Id.* 13–15. In that order, the Court also declined to order interlocutory sale of the Lady Antoinette, but noted that it conditioned the vacatur on the posting of security "in light of the risk of the Vessel's deterioration and the costs that vacating the default may impose on PMJ." *Id.* at 14. The Court ordered the Baucos to submit a letter to the Court within three days of posting security and to file an answer within 14 days of the Opinion. *Id.* at 15.

On January 31, 2018, the Baucos filed an answer, Dkt. No. 90, as well as a letter requesting (1) permission to inspect the Lady Antoinette in order to obtain a full appraisal of it and (2) an extension of time to post the security required by the Court's January 18 Opinion. Dkt. No. 91. The Court granted the Baucos permission to inspect the Lady Antoinette but made no decision with respect to any other issues raised. Dkt. No. 100. On March 20, 2018, the Baucos informed the Court that United Yacht Sales had performed an inspection of the Lady Antoinette and its report indicated that the vessel was "really not ready for a sale." Dkt. No. 109

at 1. According to the Baucos, the report listed several measures that should be taken to "prepare the vessel for sale," and they requested permission to take these measures, as well as to allow United Yacht Sales to market and sell it and "use those funds to post the bond required by the Court in its prior order." *Id.* at 2. The Court subsequently granted the Baucos permission to ready the Lady Antoinette for private sale and to pay the proceeds of any sale directly to the Clerk of the United States District Court for the Southern District of New York. Dkt. No. 126.

The Baucos wrote to the Court on June 13, 2018, requesting "clarification regarding whether [they] remain[ed] in default in light of their economic inability to place a bond pursuant to the [Court's January 18 Opinion]. Dkt. No. 135 at 2. They also requested to use the funds from sale of the Lady Antoinette to post security and to allow them to proceed in the case as if the default had been vacated until such a time as they could post security from the sale of the Vessel. *Id.* PMJ filed a response to this request, arguing that the Baucos were in effect moving to vacate the default and requesting that the Court set a briefing schedule accordingly. Dkt. No. 137. This Court subsequently set a briefing schedule for the present motion. Dkt. No. 139.

On July 13, 2018, the deadline set for such a motion, the Baucos filed a motion styled as a "motion to modify the January 1[8], 2018 order to permit for the proceeds from the sale of vessel to be posted in lieu of bond or other form of adequate security." Dkt. No. 150.[1] Following several status updates to the Court indicating that a private buyer had not yet been secured, on October 11, 2018, the Court ordered the Clerk of Court to issue a Writ of *Venditioni Exponas* to the Marshal for the public sale of the Lady Antoinette to the highest bidder. Dkt. No. 164.

---

[1] The motion filed on July 13, 2018 was incorrectly filed and terminated as a result. *See* Dkt. No. 145. The Court cites to the properly filed motion and accompanying memorandum of law throughout this Opinion and Order. *See* Dkt. Nos. 149, 150.

On the eve of public sale, which was to take place on November 9, 2018, the Baucos' counsel informed the Court that defendant Antoinette Bauco had just filed for bankruptcy, that all matters to which she was then a party were stayed as a result, and that the impending sale—scheduled for the next day—had to be cancelled. Dkt. No. 165. Following this eleventh-hour notification, the Court stayed the sale in light of the automatic bankruptcy stay in place as of Antoinette Bauco's filing of a bankruptcy petition the prior day. Dkt. No. 168. On February 12, 2019, PMJ notified the Court that the bankruptcy petition was dismissed on February 8, 2019, for failure to file the schedules as required by 11 U.S.C. § 521(a)(1), Dkt. No. 178, and on February 20, 2019, the Court again ordered the Clerk of Court to issue a Writ of *Venditioni Exponas* to the Marshal for the public sale of the Lady Antoinette to the highest bidder, Dkt. No. 185. Ultimately, the Lady Antoinette was sold at public auction on Friday, April 26, 2019, for a credit bid of $50,000 made by PMJ. *See* Dkt. No. 192.

Now before the Court is the Baucos' July 13 motion. Though styled as a "motion to modify the January 1[8], 2018 order to permit for the proceeds from the sale of vessel to be posted in lieu of bond or other form of adequate security," the Court treats it as a second motion to vacate default. *See* Dkt. No. 139 (ordering the Baucos to submit "any motion to vacate the default" by July 11, 2018, a deadline the Court subsequently extended to July 13, 2018). For the reasons set forth below, the Baucos' motion is DENIED.

## III.    LEGAL STANDARD

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." However, after such default is entered, the court may set it aside for "good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists, courts

balance three factors: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). Other relevant equitable factors that may also be considered include "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "The dispositions of motions for . . . relief from [defaults] under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the *credibility and good faith* of the parties." *Id.* at 95 (emphasis added).

The Court previously considered a motion to vacate the default entered against the Baucos in its January 18 Opinion. *See* Dkt. No. 88. In that Opinion, the Court conditionally granted the motion subject to the Baucos posting a bond or other form of adequate security in the amount of $143,749.92. *Id.* at 15. In the over a year and a half since that Opinion was issued, the Baucos have failed to post a bond or other adequate security in the amount required by the Court. The Baucos now argue, in effect, that the Court should vacate the default unconditionally "based upon [their] commitment [at the time the motion was filed] to sell the vessel and place the proceeds with the Court." Dkt. No. 150 at 6. The Court, however, does not decide this motion to vacate the default any differently because the balance of "good cause" factors has not materially changed.

## A. Willfulness of Default and Meritorious Defenses

The Court's analysis of the willfulness of default and the existence of any meritorious defenses in its January 18 Opinion remains unchanged by the passage of time. The Court now restates, for the reasons set forth in that Opinion, that the Baucos' default was willful. *See* Dkt. No. 88 at 4–6. The Court further reiterates that they may be able to successfully claim usury and necessary party defenses, though the likelihood of success on the latter defense is low. *Id.* at 6–11. The first factor thus weighs against setting aside the default, while the second factor weighs in favor of doing so.

## B. Prejudice

Prejudice may exist if the delay occasioned by vacatur would "thwart plaintiff's recovery or remedy." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (internal quotation marks omitted). The Court previously found that PMJ would suffer financial prejudice if the default were vacated because the delay caused by vacating the default could "thwart [PMJ's] recovery or remedy, " as the Lady Antoinette would continue to deteriorate and thus depreciate in value the longer it remained out of water and not receiving maintenance. *See* Dkt. No. 88 at 12–13. Because the Lady Antoinette has since been sold, the possibility of its continued deterioration and depreciation further thwarting PMJ's recovery has been eliminated. Thus, PMJ would not at this point suffer financial prejudice if the default was vacated. Accordingly, this factor, which previously weighed against vacating the default, no longer does.

## C. Other Equitable Factors

This Court may also consider other equitable factors in determining whether "good cause" exists to vacate a default, including whether "the failure to follow a rule of procedure was

7

a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96.

Events that have transpired since the Court's January 18 Opinion strongly suggest that the Baucos' failure to follow a rule of procedure was *not* a mistake made in good faith. Since that Opinion was issued over a year and a half ago, the Baucos have failed to post the required security and have nonetheless continued to litigate this case as if not in default. On March 16, 2018, the Baucos' counsel failed to appear at the conference the Court scheduled following issuance of the January 18 Opinion. *See* Dkt. No. 107. Furthermore, though the Court expresses no opinion as to whether it was made in *bad* faith, Antoinette Bauco's filing of a bankruptcy petition—which was ultimately automatically dismissed for her failure to file the required bankruptcy schedules within 45 days of the petition date, *see In re: Antoinette Bauco*, No. 18-36879 (cgm) (Bankr. S.D.N.Y.)—*on the eve* of public sale of the Lady Antoinette delayed that sale by over five months. Most recently, the Baucos' counsel failed to meet briefing deadlines that *he* himself proposed because he was on a family vacation that was scheduled more than two weeks before he proposed the briefing schedule. *See* Dkt. No. 202. The Court infers from the Baucos' conduct since issuance of the January 18 Opinion, and their demonstrated inability to comply with court orders and deadlines, that their failure to timely respond to PMJ's Complaint was not a mistake made in good faith.

Finally, the entry of default here would not bring about a harsh or unfair result because the Baucos have had over a year and a half to satisfy the condition the Court placed on the vacatur of default in its January 18 Opinion and have failed to do so. Accordingly, the other equitable factors this Court considers weigh against vacating the default.

## D. Balance of Factors

The balance of factors remains close: the default was willful, it was likely not the result of a good faith mistake, and the entry of default would not bring about a harsh or unfair result. However, the Baucos have at least one potentially meritorious defense, and the possibility of financial prejudice to PMJ has evaporated with the sale of the Lady Antoinette, such that any delay vacating the default may occasion will not further prejudice it. Given the general preference for deciding cases on the merits, and the fact that the balance of factors does not more clearly favor PMJ or the Baucos than it did when the Court last considered this issue, the Court again vacates the default on the same condition imposed in its January 18 Opinion.

Conditioning vacatur on the posting of a bond or other adequate security in the amount of $143,749.92 remains necessary. The possibility that PMJ will be unable to fully recover due to deterioration and depreciation of the Lady Antoinette has been realized with the $50,000 sale of the Vessel. However, as already noted, because the Vessel has now been sold, PMJ will not suffer *further* financial prejudice from any delay occasioned by vacatur of the default. Nonetheless, the Baucos should not now benefit from their own failure to post bond or other adequate security over a year and a half ago. Vacatur thus remains conditioned on the Baucos' posting a bond or other form of adequate security in the amount of $92,749.92, which, when added to the $50,000 credit bid for which PMJ purchased the Lady Antoinette at public auction, equals the minimum amount PMJ stated it was entitled to in its Complaint. *See* Compl. ¶ 30.

## E. Motion to "Modify the Court's Prior Order"

Were this Court to treat the Baucos' motion as one to modify the Court's January 18 Order under Federal Rule of Civil Procedure 54(b), the Baucos would fare no better. They assert that the "underlying premise of [their] motion seeks to satisfy the second prong of the [January

9

18] Order[,] which requires[] 'other form of adequate security' to protect PMJ." Dkt. No. 151 at 2–3 (referencing the condition the Court set in its January 18 Opinion that the default would be vacated "provided that the Baucos post a bond or *other form of adequate security* in the amount of $143,749.92"). In other words, the Baucos argue that the Court should "modify its order" to deem the proceeds of the sale of the Lady Antoinette an "other form of adequate security" such that the condition on vacatur is satisfied by the Baucos' commitment to place those proceeds with the Court upon its sale. However, this argument presupposes that the Lady Antoinette would garner *more* than the required security when sold—a set of circumstances which has not come to pass. With the benefit of hindsight, the Court finds that the proceeds of the Vessel's sale cannot constitute an "other form of adequate security" because they do not amount to the $143,749.92 set by this Court in its January 18 Opinion. The Court thus denies the Baucos' motion for this additional reason.

## IV.    CONCLUSION

The Court denies the Baucos' motion to unconditionally vacate the default or modify the Court's prior order. The Court also hereby denies the Baucos' request for oral argument on this motion. *See* Dkt. No. 154.

If the Baucos do not submit a letter to the Court within seven days of the date of this Opinion and Order informing it that they have posted a bond in the amount of $92,749.92, the default will not be vacated. In any event, PMJ shall follow the briefing schedule for either a motion for default judgment or a motion for summary judgment set out in Magistrate Judge Aaron's Order dated June 12, 2019. Dkt. No. 199.

This resolves Docket Numbers 149 and 154.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

_____
ALISON J. NATHAN
United States District Judge